**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                                         CR. No. 92-486 JC

GABRIEL RODRIGUEZ AGUIRRE,
ELENO AGUIRRE, DOLORES
CONTRERAS, and TONY BENCOMO,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on the government's Motion for Summary Judgment Regarding Defendants' Rule 41(e) Motion, filed March 21, 2002 (*Doc. 1653*) and on Defendants' Motion for Partial Summary Judgment, filed March 25, 2002 (*Doc. 1655*). On July 17, 2002, this Court held an evidentiary hearing to aid in the resolution of these motions. The Court, having reviewed the motions, memoranda, all relevant authorities, and having heard and considered the parties' testimony and evidence at the hearing, finds the government's motion well taken, and it is, therefore, granted. The Court further finds Defendants' motion not well taken, and it is, therefore, denied.

**I.      Background**

The Aguirre Drug Trafficking Organization operated out of Deming, New Mexico from 1985 until October of 1992, when federal agents arrested its members. The organization trafficked in

marijuana and cocaine, distributing at least 29,000 pounds of marijuana and 24,000 pounds of cocaine, resulting in approximately $28,000,000 in revenue from the marijuana and $13,000,000 in revenue from the cocaine. The head of the organization, and claimant in this action, is Gabriel Refugio Rodriguez-Aguirre. His daughter, Dolores Contreras; his brother, Eleno Aguirre; and his nephew, Tony Bencomo are also Claimants.[1]

On December 15, 1994, a jury convicted Gabriel Aguirre on six counts of possession with intent to distribute marijuana and cocaine, five counts of money laundering and two counts of investment of illicit drug profits. On March 31, 1995, the court sentenced Gabriel Aguirre to 360 months imprisonment.

On December 15, 1994, a jury convicted Eleno Aguirre of conspiracy to distribute marijuana and cocaine, and possession with intent to distribute cocaine, money laundering, and investment of illicit drug profits. On March 31, 1995, the court sentenced Eleno Aguirre to 235 months imprisonment.

On December 15, 1994, a jury convicted Dolores Contreras on charges of conspiracy to distribute marijuana and cocaine, money laundering and investment of illegal drug profits. On March 31, 1995, the court sentenced her to 120 months imprisonment. Tony Bencomo pleaded guilty to felony money laundering offenses, and the court sentenced him to 96 months imprisonment.

The Aguirre Organization used the proceeds from its drug trafficking to purchase vehicles, heavy equipment, real estate, horses, businesses and other items. In October of 1992, federal agents

---

[1] Neither Dolores Contreras nor Tony Bencomo appeared for the hearing on July 17, 2002. Defendants' attorney agreed to forgo any further claims by Tony Bencomo. *United States v. Rodriguez-Aguirre,* Cr. No. 92-486, Trans. at 4 (D.N.M. July 17, 2002); Fed. R. Civ. P. 41(a)(2). As there was no such agreement regarding Ms. Contreras, I will continue to address her claims.

executed search warrants at the home of Eleno Aguirre and upon multiple parcels of real property including "improvements, attachments and contents therein located on or below [those properties]." Govt's Exhibits 7-28. Defendants were personally served with copies of the United States' Complaint for Forfeiture of Property and Summons in *United States v. Fifty-One Items of Real Property et al.*, Civ. No. 92-1155 JC (D.N.M. Dec. 23, 1993). Neither Eleno Aguirre nor Dolores Contreras filed a claim or answer to the United States' Complaint in *Fifty-One Items of Real Property et al.*, so the court entered a Partial Default Judgment against them on December 15, 1993, forfeiting their right, title and interest in the properties. On November 12, 1992, Gabriel Aguirre filed a claim for return of property in *Fifty-One Items of Real Property et al.*. Pursuant to D.N.M. LR-CIV 7.8, the court struck the pleading, as he failed to respond to the United States' Motion to Strike. On December 23, 1993, the court entered a judgment and forfeiture against Gabriel Aguirre of all right, title and interest in the defendant properties in *Fifty-One Items of Real Property et al*. The judgment forfeited the fifty-one items of property and their contents to the United States, except those items returned to innocent owners.

In *United States v. 247 Horses et al.,* Civ.. No. 93-102 JC (D.N.M. Apr. 19, 1994), the United States obtained the forfeiture of seized race horses, cash, vehicles, and other property. The Court entered a Final Order on April 18, 1994, which it amended on June 29, 1994 to include a list of the forfeited conveyances. Subsequently, the United States obtained the forfeiture of additional parcels of real property and a life insurance policy in *United States v. Eighty Acres et al.,* Civ. No. 95-981 JC (D.N.M. Sept. 15, 1999). None of the disputed items is affected by this judgment.

On April 20, 2000, Defendants filed a motion for return of property pursuant to Federal Rules of Criminal Procedure 41(e). The motion seeks the return of 127 items of property, which Defendants

claim were seized but never forfeited. Upon a motion to dismiss by the United States, the Court dismissed Defendants' motion on August 17, 2000. Defendants appealed, and the Tenth Circuit reversed and remanded. *United States v. Rodriguez-Aguirre*, 264 F.3d 1195 (10th Cir. 2001).

Subsequent to the Tenth Circuit's remand, the United States filed a Motion for Summary Judgment Regarding Defendant's Rule 41(e) Motion, filed March 21, 2002 (*Doc. 1653*), and Defendants filed a Motion for Partial Summary Judgment, filed March 25, 2002 (*Doc. 1655*). After reviewing the motions, I determined that an evidentiary hearing was required to aid in the disposition of the case.

## II.    Standard of Review

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed.R.Civ..P. 56(c). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. *Id.* at 256. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. *Anderson,* 477 U.S. at 248, 256. To meet this burden, the non-movant must specify evidence in the record and

demonstrate the precise manner in which that evidence supports its claims. *Gross v. Burggraf*, 53 F.3d 1531, 1546 (10th Cir. 1995). An issue is material only if its resolution could affect the outcome of the action. *Anderson*, 477 U.S. at 248. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. *Id.* If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 597.

### III.   DISCUSSION

In *United States v. Rodriguez-Aguirre*, 264 F.3d at 1211, the Tenth Circuit reversed and remanded this Court's Memorandum Opinion and Order, finding, among other things, that Defendants had standing to sue. In its Opinion, the Circuit declared it did not have sufficient evidence before it to determine "precisely what happened to the 127 items of personal property Appellants seek to have returned," and thus could not determine whether the motion is barred by the six-year statute of limitations under 28 U.S.C. § 2401(a). Apparently, neither party submitted sufficient information for the Circuit to determine whether the government instituted administrative forfeiture proceedings or whether it seized and retained the property without any forfeiture proceedings. The Circuit thus remanded the case to settle that issue and, consequently, whether the statute of limitations bars the suit. As the government contends, however, there is another possible scenario: whether Defendants' motion is contesting the forfeiture proceedings in *Fifty-One Items of Real Property et al.* and/or in *247 Horses et al.*. If such is the situation, this Court lacks jurisdiction, as a Rule 41(e) motion is not the proper legal remedy.

#### A.   Court's denial of Defendants' oral motion to amend

In Defendants' List of Properties Claimed, with Description and Identity of Persons Claiming

Them, filed Dec. 7, 2001 (*Doc. 1639*), Defendants claim approximately 205 items. At the July 17, 2002 hearing, I denied Defendants' oral motion to amend their pleadings and refused to hear evidence beyond the original 127 items that went before the Tenth Circuit. *Mason v. Okla. Turnpike Auth.*, 182 F.3d 1212, 1214 (10th Cir. 1999) (Scope of Defendant's prior appeal precluded assertion on remand of additional constitutional arguments.); *Enich Motors Corp. v. General Motors Corp.,* 15 F.R.D. 354, 355 (N.D. Ill. 1953) (The scope of the issues that are open in the trial court upon remand from an appellate court is to be determined by the order remanding the case.). As will be demonstrated, even had I considered the extra items, the United States' evidence is sufficient to demonstrate that either the additional items had not been seized, or they are 21 U.S.C. § 881(a) property, as they are sufficiently related and similar to the original 127 items.

**B.** **Administrative forfeiture**

In a footnote, the Circuit in *Rodriguez-Aguirre*, stated that it did not have sufficient evidence to determine whether the government had judicially forfeited Defendants' claimed items in the previous judicial forfeiture proceedings. *Rodriguez-Aguirre*, 264 F.3d at 1206 n.7. Responding to the Tenth Circuit, the United States admits that it never initiated administrative forfeiture proceedings, asserting that the property at issue, if seized, was judicially forfeited in *Fifty-One Items of Real Property et al.* or *247 Horses et al.*. Before proceeding further, I must address this issue.

**Judicial forfeiture of Defendants' property**

Upon appeal, the Tenth Circuit held that a six-year statute of limitations applies to Rule 41(e) motions contesting administrative forfeitures and to Rule 41(e) motions that claim the government is holding Claimants' property without any forfeiture proceedings. In the latter scenario, the statute of limitations begins to run "when the criminal proceedings against the claimant have concluded."

*Rodriguez-Aguirre*, 264 F.3d at 1212. Yet, as will be discussed, neither scenario seems appropriate in this case. The next inquiry is thus whether Defendants are contesting the prior judicial forfeiture proceedings. If Defendants' Rule 41(e) motion is challenging these proceedings, the statute of limitations question is not determinative, as this Court lacks jurisdiction to hear the motion. *United States v. Madden,* 95 F.3d 38, 40 (10th Cir. 1996) ("[I]n light of Fed.R.Crim.P. 54(b)(5), neither Fed.R.Crim.P. 41(e) nor an independent equitable action brought under the guise of Fed.R.Crim.P. 41(e)" is the appropriate vehicle to challenge a judicial forfeiture.); *United States v. Aponte-Vega*, 230 F.3d 522 (2nd Cir. 2000) (The Second Circuit upheld the district court's determination that claimant's motion was time barred, even after the court construed the Rule 41(e) motion contesting a judicial forfeiture as a motion for reconsideration under Rule 60(b)(1) and 60(b)(3).).

Contrary to the government's assertion, Defendants maintain that their Rule 41(e) motion is proper, for they are not contesting the judicial forfeitures. Under Defendants' theory, no forfeitures occurred, for the items were not included in the government's complaints. In fact, they acknowledge that Fed. R. Civ.. P. 60(b) governs judicial forfeiture proceedings. Defs' Opp. to Govt's Mot. for Summary Judgment, filed Apr. 8, 2002 at 5-6 (*Doc. 1660*). Indeed, Defendants state that they "will withdraw their request for return of those items" if they were previously forfeited. *Rodriguez-Aguirre*, 264 F.3d at 1206 n.7.

Defendants' contention that they are solely contesting the government's wrongful retention of their property without regard to the prior judicial forfeitures is inaccurate, at least, and misleading, at most. For example, Defendants fail to provide the Court with evidence demonstrating such withholding by the government besides affidavits from them asserting that the items were on the property at the time of the seizures. Furthermore, throughout Defendants' memoranda, they

-7-

continually refer to the government's complaint in *51 Items of Real Property et al.*, including five pages of legal argument concerning the sufficiency of the complaint in that proceeding. Defs' Mot. for Partial Summary Judgment, filed March 25, 2002 (*Doc. 1655*). Such detailed analysis indicates that Defendants are challenging the judicial forfeitures regardless of their contentions to the contrary. Moreover, Defendants' exhibits include a portion of that complaint. This exhibit allegedly demonstrates that the items were not included in it, and thus were not in the judgment of forfeiture. Hence, the government is continuing to hold the property illegally. Yet, what this exhibit indicates is that Defendants are contesting the sufficiency of the complaint and, therefore, the judgment itself.

I acknowledge the difficulty with attempting to demonstrate that the government is illegally withholding certain properties without challenging the judgment. In their motions and at the hearing, however, Defendants failed to provide any credible testimony, facts or other evidence indicating such retention by the government; whereas the government's witness testimony and evidence clearly supports its claim that the property was either not seized or was judicially forfeited. For example, Agent Kenneth Gayle Sawyer, Senior Special Agent with the United States Customs Service and case agent for the criminal portion of *United States v. Rodriguez-Aguirre*; and Susan R. Finely, Property Management Specialist for the United States Marshals Service, who was responsible for the property seized from the Aguirre Organization beginning in 1994, provided sworn affidavits stating that they were familiar with the property and that they recollected that which the government seized and that which the government forfeited in the judicial forfeiture actions. Both contend that the government's list of items either (1) seized and forfeited, (2) not seized, or (3) abandoned, is accurate. Govt's Ex. 2, 3. At the hearing, Agent Sawyer reiterated that the government's list accurately depicts the disposition of Defendants' personal property. Trans. at 182. Agent Lawrence Hart, Special Agent

with the United States Treasury, Internal Revenue Service, Criminal Investigation Division, also testified that the government's list accurately depicts that which it forfeited in the previous judicial forfeiture proceedings. Trans. at 197. Agent Hart's testimony is particularly demonstrative, for his approximately 250 page affidavit made up the majority of the government's complaint in *51 Items of Real Property et al.*.

Due to this testimony, the relevant legal authority, the pleadings, and the evidence, I find that Defendants' Rule 41 (e) motion is challenging the prior judicial forfeitures and thus this Court lacks jurisdiction to hear it.

C.      **Government's alleged seizure of Defendants' property**

If, however, Defendants' Rule 41(e) motion does not challenge the prior judicial forfeitures, the next determination is whether the government's contention that it did not seize the majority of the claimed items is accurate in light of the evidence and of the testimony at the July 17 hearing. Defendants assert that the government improperly seized and retained approximately 127 items. In response, the government claims that eighty-nine items were not seized, seven items were seized in part and forfeited, twenty-four items were seized and forfeited, one item was returned to the registered owner, four items were declared abandoned, one item was returned to Danny Aguirre, and one item, the mutilated currency, was destroyed because it had no value. Gov't's Closing Statement.

Both Gabriel Aguirre and Eleno Aguirre took the stand and testified that the government seized and is still holding the 127 items. Their testimony, though, is inadequate to support their claim and overcome the government's evidence. For example, Gabriel Aguirre testified that various mobile homes were fully furnished. Yet, the government counteracts this assertion with testimony by Special Agent Richard Wayne Sanders of the Drug Enforcement Administration, who was one of the original

case agents in the criminal portion of this case, and with multiple video tapes of the properties, including the mobile homes.[2] Agent Sanders testified that he was familiar with the mobile homes on the date of the seizures, and he did not recollect them to be fully furnished. Upon detailed review in court, the videos support his testimony.

Prior to reviewing the videos, Eleno Aguirre testified that he owned multiple pieces of gym equipment that he kept outside on his property located at 5302 Country Club Road. In contrast, Agent Sanders testified that he assisted in the search of that property and had no recollection of any such equipment, trans. at 121, nor do the videos indicate the existence of the equipment.[3] Eleno Aguirre's testimony also belies the true destination of gym equipment, which is indoors. Eleno acknowledges this by admitting on direct examination that he was "trying to make some kind of gym for myself and my boys." Trans. at 85. This testimony suggests that he intended for the equipment to be indoors. Thus, even assuming such equipment existed, Defendants' contention that it was not forfeited because it is not "contents of improvements" due to its location outside is inaccurate and not well taken.

Regarding the other pieces of property, Agent Sanders testified that he did not recollect the items to be on the real properties on the day of the seizures. Specifically, Agent Sanders testified that he did not see any of the items Eleno Aguirre claims were seized at his home. Trans. at 121. For example, Agent Sanders remembered viewing various items, such as "plywood, parts of vehicles, a utility truck's bed, some old cars, some old trucks," and a satellite dish on the ground. *Id.* Inside a

---

[2] The government had Agent Sanders review in court each video tape that agents recorded as they searched the real properties forfeited in *51 Items of Real Property et al.*. These tapes clearly support the government's contention regarding the claimed items.

[3] Agent Sanders stated that there was some gym equipment inside a shop, but this is not the equipment at issue.

mechanic's shop Agent Sanders found some tools, drills, other mechanic shop items, and gym equipment. *Id.*

To further support the government's contention that the items were not on the real properties on the date of the seizures, Agent Sawyer testified that he had seen the real properties numerous times and the videos accurately reflect that none of the items were on the properties on that date. Prior to the execution of the search and seizure warrants, Agent Sawyer stated that agents observing the real properties noticed that the vehicles located on the properties were being removed until almost none remained on the date of the search. Trans. at 195. Agent Sawyer also testified that the government was unable to execute all of the seizure warrants, as they could not located many of the more expensive items. Trans. 196.

Concerning the approximately $5,600 in mutilated currency, Defendants assert that the government is illegally withholding it. At the July 17 hearing, Agent Sanders testified that he was one of the agents who discovered approximately $1,800,000 in currency[4] and approximately $5,600 in mutilated currency buried in the back yard of Eleno Aguirre's home. Trans. at 116. He stated that the money was so molded and deteriorated that the agents had difficulty separating the bills, and because of this condition the U.S. Treasury determined that it must be destroyed. Trans. at 120. Due to Agent Sanders' testimony and lack of any contradictory evidence by Defendants, I find that the government is not illegally withholding the claimed mutilated currency, as it was destroyed.

Defendants cannot obtain the unobtainable, for this Court does not have jurisdiction over property that the government held neither in actual nor in constructive possession. *United States v. Downs*, 2001 WL 1420656 *2 (10th Cir. Nov. 14, 2001) (unpublished disposition); *United States v.*

---

[4] The government obtained a judicial forfeiture over this currency in *247 Horses et al.*.

-11-

*Solis*, 108 F.3d 722, 723 (7th Cir. 1997) (citing *United States v. White*, 108 F.2d 260, 261 (8th Cir. 1983)) (A Rule 41(e) motion should be denied if the government does not possess the property.). In this case, Defendants fail to provide the Court with documents, testimony or other evidence supporting their affidavits that assert that the government seized the referenced items and is in possession of them; whereas the government bolsters its claim with testimony from Agents Sanders and Sawyer, video tapes of the properties, and affidavits from Agent Sawyer and Susan Finley. I thus find that the government did not seize the eighty-nine items Defendants assert agents seized when they seized the real properties.

**D.     § 881(a) property**[5]

Even assuming the government seized the property and is wrongfully withholding it, Defendants' motion still fails, as at the July 17 hearing the government successfully demonstrated that the character of the property is § 881(a) property and there is a nexus between the property and Defendants' drug organization.[6] "[T]he government does not have to quiet title to § 881(a) property only through Civil forfeiture proceedings." *Clymore,* 245 F.3d at 1200. Instead, the Court may award the government "quiet title in a civil equitable proceeding based on a Rule 41(e) motion." *Id.*

In a Rule 41(e) hearing, the claimant must only demonstrate that he has a "right to lawful possession of the property and an equitable right to its return," as he is presumed to have such right of return. *Id*. at 1201. Upon meeting this burden, the government must show that it "has a legitimate

---

[5] "[N]o property right shall exist in...[a]ll moneys... or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance..., all proceeds traceable to such an exchange, and all moneys...used or intended to be used to facilitate any violation of this subchapter." 28 U.S.C. 881(a).

[6] Under the facts of *United States v. Clymore*, 245 F.3d 1195 (10th Cir. 2001), the Tenth Circuit declared void the administrative forfeiture, thus rendering the forfeiture as if it never occurred. Therefore, contrary to Defendant's assertion, in the present case, assuming there was no forfeiture, the circumstances are sufficiently similar such that *Clymore's* legal framework may be used.

reason to retain the property." *Id.* It may demonstrate this by showing "a cognizable claim of ownership or right of possession adverse to that of the movant." *Id.* In other words, the government must prove that it has already established that the property is § 881(a) property at the criminal trial or at the forfeiture hearing, or it may prove at the Rule 41(e) hearing that the property is § 881(a) property. *Id.* Subject to any constitutional challenges, only an innocent owner may have a right to the property after the government meets its burden. *Id.*

In the present case, the government successfully met its burden by demonstrating at the hearing that the claimed items are § 881(a) property. To support its case, the government called three expert witnesses to testify: Agent Sanders, Agent Sawyer, and Agent Hart. Each agent specifically testified that to the best of his knowledge, the Aguirre Organization obtained the contested items via drug trafficking. Trans. at 181, 193, 204. Agent Hart testified regarding the financial investigation he performed on Defendants and their businesses. He testified that the gross proceeds realized by the Aguirre Organization were approximately 68-70 million dollars. Trans. at 198. He further stated that neither Gabriel Aguirre's legitimate income nor that of Eleno Aguirre would have been sufficient to account for the assets in question.[7] Trans. at 199-200. Agent Hart also testified that Defendants' legitimate businesses operated at a loss, such that they periodically needed the infusion of additional funds to continue operating. These other funds, the agent testified, were from drug proceeds and thus the businesses could not have produced the funds to purchase any of the items at issue. Trans. at 204.

Agent Hart specifically testified regarding the Aguirres' horse racing business and their horse,

---

[7] Agent Hart's affidavit in *51 Items of Real Property et al.,* shows that Gabriel Aguirre spent $2,346,174.48 over his legal income, and Eleno Aguirre spent $402,436.17 over his legal income of approximately $12,000 per year. *Fifty-One Items of Real Property*, at 197, 166. Agent Hart's affidavit also demonstrates that Dolores Contreras did not have sufficient legitimate income to pay for any of her claimed items. *Id.* at 171.

-13-

Royal Quick Dash, who won the $1,000,000 Great American Futurity.[8] After he conducted the detailed analysis, he concluded that drug proceeds were used to purchase Royal Quick Dash and all other aspects of their horse racing business. Even with the winnings, Agent Hart stated that the racing business lost revenue and needed infusions of capital, which he determined came from drug proceeds.

Gabriel Aguirre testified that the money used to purchase the items did not come from drug proceeds but came from money his father found in an abandoned mine in Mexico or was money he had earned racing horses in Mexico. Trans. at 54, 35-36. Contradicting this testimony, Agent Hart testified that there was no evidence that the Aguirres raced horses in Mexico, but even if they had, they never legally introduced the winnings into the United States economy. Trans. at 207.

The Court finds the testimony of the government's witnesses credible and concludes that the agents sufficiently demonstrated a nexus between the personal property and the Aguirre Organization's drug trafficking and laundering business. The Court further finds that the government successfully proved that Defendants' legitimate income was wholly insufficient to purchase any of the items. Furthermore, I find Gabriel Aguirre's testimony regarding the abandoned mine and racing in Mexico not credible and thus insufficient to overcome the government's witness testimony and evidence.

E.    **Declarations of abandonment**

In its declarations of abandonment, the government declared abandoned a 1976 Chevrolet El Camino, a 1953 Chevrolet Hardtop, and 18 pool cues, two grandfather clocks, and miscellaneous furniture, the latter three of which were seized from a storage shed in Las Cruces, New Mexico. The

---

[8] Royal Quick Dash was only one of hundreds of horses the Aguirres owned. The majority of the horses were forfeited in *247 Horses et al.*.

government asserts that the Drug Enforcement Administration sent notice to all known Claimants prior to the abandonment and thus fulfilled the government's constitutional obligations.[9]

Defendants complain that they never received notices of abandonment regarding the items at Rawlins Self Storage in Las Cruces, New Mexico, unit number 111. They argue that due to their ownership interest in them, the government should have sent them notices. Moreover, they claim that even assuming Danny had an ownership interest, he never received the notice letter either. To support their claim, on the stand Danny stated that after speaking with an agent, he went to retrieve the seized items, yet they (unidentified persons) did not allow him to take any of the items. Even though the government has as an exhibit Danny's acknowledged receipt of thirteen leather (one was suede) jackets, Danny claims that though he signed for the release of the jackets, he actually did not know for what he was signing, nor did he receive anything.[10]

In rebuttal, the government's witness, Agent Sanders, testified regarding the storage shed items. He testified that he spoke with Danny regarding the leather jackets and pool cues, and told him he would get them back after the agency processed and organized them. Agent Sanders also testified that Danny subsequently got the items back. Trans. 124. Yet, because he never came forth to claim the articles besides the jackets, the government declared them abandoned.

Even if I determine that the notices of abandonment, including those for the cars, were constitutionally deficient and thus void, at the hearing the government, as determined previously,

---

[9] The government maintains that it only sent notice to Danny Aguirre, as only his and his girlfriend's names were on the lease agreement.

[10] Danny Aguirre is not a party to this suit, so his testimony is only being used to help determine whether the government is wrongfully retaining the items due to invalid notices of abandonment, as I will assume Defendants have an ownership interest in the items. The government states, and Defendants do not contest, that the leather jackets had the name "Danny Aguirre" stitched into them, which indicates Danny's ownership interest in them. I thus find that the jackets belonged to Danny Aguirre, and Defendants had no ownership interest in them.

adequately demonstrated a nexus between all of the contested property and the drug proceeds from the Aguirre Organization.[11] *Clymore*, 245 F.3d at 1201. Finally, even assuming Gabriel Aguirre has a possessory or ownership interest in the contested boat (item number 87), the government's evidence clearly supports its argument that the boat also came from drug proceeds.

## IV.    Conclusion

Defendants fail to meet their burden as non-movants under the standard for summary judgment. Due to the lack of evidentiary support, they do not sufficiently demonstrate that the government illegally seized and withheld multiple pieces of their personal property. Although they attempt to characterize their claim as challenging the government's retention of the items, they actually are challenging the judicial forfeitures, as evidenced by the arguments in their memoranda. A Rule 41(e) motion was thus the incorrect method of redress, negating the jurisdiction of this Court. Yet, even following Defendants' theory, their Rule 41(e) motion remains unsuccessful, as the government, in the July 17 hearing, successfully demonstrated a nexus between all of the property and the drug proceeds from the Aguirre Organization proving that the property is § 881(a) property. Moreover, after observation of Defendants at the evidentiary hearing and in light of their often implausible explanations and the record as a whole, I find that Defendants are not credible.

WHEREFORE,

IT IS ORDERED that the government's Motion for Summary Judgment Regarding Defendants' Rule 41(e) Motion, filed March 21, 2002 (*Doc. 1653*) is GRANTED.

---

[11] Although *United States v. Clymore,* 245 F.3d 1195 (10th Cir. 2001) concerns administrative forfeitures, a parallel may be drawn between those proceedings and abandonment proceedings, allowing me to analogize the two similar situations. Thus even if the government failed to notify all interested parties and the declarations of abandonment are deemed void, it successfully demonstrated a legitimate reason to retain the property due to its character as § 881(a) property.

IT IS FURTHER ORDERED that Defendants' Motion for Partial Summary Judgment, filed March 25, 2002 (*Doc. 1655*) is DENIED.

DATED October 16, 2002.

_____
SENIOR UNITED STATES DISTRICT JUDGE


Attorney for the United States:

    Steven Kotz, AUSA
    Albuquerque, New Mexico

Attorney for Defendants:

    Brenda Grantland, Esq.
    Mill Valley, California